**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re: JOHN DAHLGREN,
                                          Chapter 13
                                          Case No.  09-18982  (RTL)

          Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## OPINION

**APPEARANCES:**

William H. Oliver, Jr., Esq.
Attorney for Regina Palone, Movant

Broege, Neumann, Fischer & Shaver
David E. Shaver, Esq.
Attorneys for John Dahlgren, Debtor

**RAYMOND T. LYONS, U.S.B.J.**

## INTRODUCTION

      This chapter 13 debtor's plan proposes to treat his former paramour's interest in their jointly owned real property as a claim to be satisfied through the plan, leaving him as the sole owner.  Prior to this bankruptcy case the co-owner had obtained an order from the state court for sale of the property in lieu of partition.  The co-owner moves to dismiss the Debtor's chapter 13 case for lack of good faith in filing pursuant to 11 U.S.C. § 1307(c).  She also seeks a determination that the Debtor's plan is not confirmable because it was proposed in bad faith pursuant to 11 U.S.C. § 1325(a)(3) and because the Debtor filed for bankruptcy relief in bad

faith pursuant to 11 U.S.C. § 1325(a)(7).

The motion to dismiss the Debtor's case is denied. The Debtor will be given an opportunity to propose a confirmable plan because there is sufficient value in the property to satisfy all claims in full so that dismissal would not be in the best interest of the creditors. However, the Debtor's plan cannot be confirmed as proposed. The Debtor does not have the authority under the Code to treat the Movant's interest in the property as a claim and to force a sale of that interest.

## JURISDICTION

This court has jurisdiction of this contested matter under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all cases and proceedings related to cases under Title 11 of the United States Code to the bankruptcy court. This is a case and a core proceeding that may be heard and determined by a bankruptcy judge under 28 U.S.C. §157(b)(1) and (2)(L) relating to confirmation of a plan.

## FINDINGS OF FACT

John Dahlgren ("Debtor") and Regina Palone ("Movant") have known each other for many years, were good friends, and began a romantic relationship in the mid-1990s. The couple lived together from late 1998 to November 2004. The Movant is a licensed real estate broker and the Debtor works as a union carpenter. During the course of their relationship the couple purchased several investment properties and one residential property ("the Farm"). The Debtor also uses the Farm to board horses. There was an agreement between the two that the Movant

would manage the properties, the Debtor would contribute capital and make improvements, and the two would both benefit from any profits.

The Farm was purchased on August 3, 2001. The Debtor advanced $35,000 earnest money for the purchase of the Farm, proceeds from the sale of his former residence. The deed is in the Debtor's name and the Movant's name together, with no designation as to ownership percentage. There are two mortgages on the Farm. The first mortgage names both the Debtor and the Movant as borrowers. The second mortgage shows the Movant alone as the borrower. Both mortgages are purchase money mortgages with the proceeds having been used toward the purchase of the Farm. The Movant's name alone appears on the second mortgage because she had a better credit rating than the Debtor and qualified for a lower interest rate. The Debtor claims he paid one hundred percent of the mortgage payments and that he is ninety-five percent owner. He testifies that the Movant expressly acknowledged this ownership ratio by indicating such on the Debtor's tax returns when she helped him eFile for the 2006 year, and again during sale negotiations with the Debtor's son in early 2008.

The relationship soured and the Movant left the Farm in 2005. She acquired her own separate residence. After more than three years of unsuccessfully attempting to convince the Debtor to sell the Farm, in January 2008, the Movant instituted a partition action in the Superior Court of New Jersey. Although the Debtor, through counsel, filed an answer and counterclaim in the matter, he failed to attend the hearing and a default judgment was entered against him on October 14, 2008 ("Sale Order"). The judgment orders the sale of the Farm and the proceeds to be held in trust until further determination by the court of the proper distribution thereof (which was later scheduled for April 9, 2009, the day the Debtor filed for bankruptcy). The judgment

also orders the Debtor to cooperate fully with the sale. The Debtor blames the adverse result in state court on his former attorney who "kept him in the dark." The Debtor testifies that he was unaware of the Sale Order until days before he filed for bankruptcy.

On April 9, 2009, the Debtor filed for bankruptcy under chapter 13. The Debtor testifies that he sustained a horseback riding injury that prevented him from working for a time resulting in medical debt that he was unable to pay. These circumstances, coupled with imminent mortgage foreclosure and the Sale Order procured by the Movant, led to the Debtor filing for bankruptcy. He seeks to have a plan approved that will save the Farm from mortgage foreclosure, in turn allowing him to continue residence at the home and operation of his horse boarding business. The plan proposes to buy out the Movant's interest in the Farm. As of July 7, 2009, the Debtor testifies he is current with his post-petition mortgage payments.

The Movant testifies that on March 5, 2009, she received an offer to purchase the Farm for $500,000, a purchase price that would yield the couple approximately $210,000 after satisfying the outstanding mortgage and tax liens on the property. The Movant seeks dismissal of the Debtor's chapter 13 case for reasons of bad faith filing in light of the totality of the circumstances pursuant to Section 1307(c) of the Bankruptcy Code. The circumstances the Movant references are: (1) the solvency of the debtor, (2) the timing of the petition, (3) the existence of an outstanding restraining order the Movant has against the Debtor, (4) the manner in which the debt arose, and (5) the Debtor's motive for the filing appears to be avoidance of the sale of the Farm. Alternatively, the Movant contends that the Debtor's plan should not be confirmed pursuant to Sections 1325(a)(3) and 1325(a)(7) of the Bankruptcy Code because the plan was not proposed in good faith and the petition was not filed in good faith.

4

## **DISCUSSION**

The Debtor owns property with the Movant, his former domestic partner, on which he maintains his permanent residence and operates a small part-time business venture. The Movant no longer resides on the property and wishes to sell the Farm pursuant to a state court order for sale in lieu of partition. As part of the Debtor's chapter 13 plan, he proposes to treat the Movant as a creditor and her interest in the property as a claim. The Debtor seeks a determination from the bankruptcy court as to the value of each party's interest in the property and approval of a plan that proposes to satisfy the value of the Movant's interest, while he remains in possession of the Farm and avoids mortgage foreclosure. The Movant moves to dismiss the Debtor's case for lack of good faith in filing pursuant to Section 1307(c) of the Bankruptcy Code; or alternatively, petitions the court to disapprove the Debtor's plan pursuant to Sections 1325(a)(3) and (a)(7).

**I. Motion to Dismiss**

Section 1307 of the Bankruptcy Code vests the court with the power to convert or dismiss a debtor's case, "whichever is in the best interests of creditors and the estate, for cause," upon the motion of a party in interest or the U.S. trustee. 11 U.S.C. § 1307(c) (2009). The Third Circuit recognizes lack of good faith as "cause" for purposes of Section 1307. *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996) (joining the Seventh, Ninth and Tenth Circuits to read a good faith requirement into chapter 13). In determining whether a chapter 13 filing was made in good faith, the facts "must be assessed on a case-by-case basis in light of the totality of the circumstances." *Lilley*, 91 F.3d at 496. Although the Third Circuit held that such a determination is "'fact intensive . . . [and] better left to the discretion of the bankruptcy court,'" it established guidelines for bankruptcy courts to follow. *Id.* (quoting *In re Love*, 957 F.2d 1350,

5

1355 (7th Cir. 1992)). In laying the groundwork, the Third Circuit relied on *Love*, which analogized good faith under Section 1307 to good faith under Section 1325, finding that the "same policy embodies the two good faith evaluations" and that "[a]t base, this inquiry often comes down to a question of whether the filing is fundamentally fair." *Love*, 957 F.2d at 1357. The court goes on to list several factors that may be considered when evaluating fundamental fairness. *Id.* The list is nonexhaustive and is repeated by the Third Circuit in *Lilley*. *Lilley*, 91 F.3d at 496. The factors listed by the circuit courts are as follows:

> [T]he nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Love*, 957 F.2d at 1357.

      The Movant argues that the Debtor filed his chapter 13 petition in bad faith and that several of the aforementioned factors ("*Lilley* factors") are satisfied. The Movant contends that the Debtor is solvent and the only reason he filed for bankruptcy is to avoid the sale of the Farm in accordance with the state court orders. The Movant also points out the suspicious timing - the petition was filed on the day the Debtor and the Movant were scheduled to appear in state court for an evidentiary hearing regarding the allocation of sale proceeds. Finally, addressing the latter three *Lilley* factors, the Movant suggests that the Debtor has not dealt fairly and honestly with her by refusing to cooperate in the state court matters and with the sale of the Farm, including threatening violence to the Movant, and by filing an adversary proceeding against the Movant in this court. The Debtor's actions have harmed the Movant emotionally and financially

and have negatively affected her once well-established credit.

The Debtor, on the other hand, testifies that he has filed for relief under chapter 13 in good faith, for the purposes of saving the Farm from mortgage foreclosure and the involuntary forced sale ordered by the state court and "to reorganize all of his debts in a meaningful manner."

The Third Circuit has established a burden-shifting analysis when a party calls into question a debtor's good faith. *See In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) ("Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith."). Dismissal should be saved for "'those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence.'" *Id.* (quoting *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)) (contains alterations to original); *see also Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 375 (3d Cir. 2007) (finding that the debtors, who had substantial income and filed bankruptcy days after a request for default judgment against them, had not demonstrated "the kind of 'egregious case' which warrants dismissal for lack of good faith"); *cf. In re SGL Carbon Corp.*, 200 F.3d 154, 169 (3d Cir. 1999) (holding that an otherwise stable and financially health company acted in bad faith when it lacked a "valid reorganization purpose" and filed for bankruptcy under chapter 11 solely to contend with antitrust litigation).

In *Tamecki*, the court relied on several factors in making its determination that the debtor's petition was not filed in good faith: (1) the debtor accrued a large amount of unexplained consumer debt prior to filing; (2) the debtor "could point to no marked calamity or

sudden loss of income that precipitated his need to accrue such a comparatively large consumer debt;" and (3) the petitioner had a readily available alternate remedy to bankruptcy. *Tamecki*, 229 F.3d at 207. Unlike the petitioner in *Tamecki*, the Debtor did not engage in frivolous over-spending prior to filing, and he can point to a serious injury to explain his current debt situation. Unlike the debtor in *SGL Carbon*, the state court litigation was not the sole reason for the Debtor's filing. Although the timing of the Debtor's bankruptcy petition and apparent forum shopping are suspicious, the circumstances do not rise to the level of bad faith as construed by the Third Circuit. Additionally, the court does not find that dismissal of the Debtor's case is in the best interest of the creditors or the estate, a consideration implicit in Section 1307 analysis. *See* 11 U.S.C. 1307(c) ("[T]he court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause."); *see also SGL Carbon*, 200 F.3d at 159 (construing the nearly identical language of Section 1112(b) to "provide[] for dismissal for cause, if it is in the best interest of the creditors and the estate"); *Lilley*, 91 F.3d at 496 ("Factors relevant to the totality of the circumstances inquiry may include . . . 'how the debtor's actions affected creditors.'"). If this case were dismissed, the Debtor and the Movant are facing imminent mortgage foreclosure, in which case they are likely to realize less profit from the sale than if they were to sell the Farm to a buyer such as the one procured by the Movant prior to the filing of this motion. This scenario would result in the unsecured creditors losing equity under the plan. For these reasons, the motion to dismiss the Debtor's chapter 13 case is denied.

**II. Objection to Confirmation of Debtor's Plan**

The Movant also objects to confirmation of the Debtor's proposed chapter 13 plan

because it was proposed in bad faith in violation of Section 1325(a)(3)[1] and because the petition being filed in bad faith, as argued above, violates Section 1325(a)(7)[2]. The same basic standards apply for determining good faith under Section 1325 as under Section 1307. *See Love*, 957 F.2d at 1354-56 (adopting the same test for Section 1307 inquiries as that used for Section 1325 but stating that the court should be more reluctant to dismiss a case under Section 1307); *In re Fickel*, No. 1-07-bk-02822, 2008 Bankr. LEXIS 1311 at *6-7 (Bankr. M.D. Pa. Apr. 10, 2008) (holding that the *Lilley* totality of the circumstances test applies to Section 1325); *In re Manno*, No. 08-15588, 2009 Bankr. LEXIS 142, at *21-22 (Bankr. E.D. Pa. Jan. 30, 2009) ("One commentator has opined that the addition of *Section 1325(a)(7)* simply evidences congressional ratification of decisions, such as *In re Lilley*, imposing a good faith filing requirement in all chapter 13 cases."). The Third Circuit has reviewed good faith under Section 1325(a)(3) in terms of whether or not the debtor "evidence[d] an intent to defraud, delay, or hinder creditors." *In re Richmond*, No. 08-1888, 2009 U.S. App. LEXIS 15491, at *2 (3d Cir. July 13, 2009).

The Movant cites to three cases to support her argument that the Debtor acted in bad faith in filing the petition and proposing the plan in violation of Section 1325. In the first case, *In re Gonzalez*, No. 08-15277, 2008 Bankr. LEXIS 3751 (Bankr. E.D. Cal. Nov. 25, 2008), the bankruptcy court found bad faith and refused to confirm the debtor's plan because the debtor was not eligible for a discharge, having filed for chapter 7 less than four years prior, and because

---

[1] "[T]he court shall confirm a plan if the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3) (2009).

[2] "[T]he court shall confirm a plan if the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7) (2009).

the plan proposed to pay creditors less than twenty percent. *Id.* at *4-5. Neither of those circumstances exist here. The Movant cites to *Manno*, a Section 1307(c) case, as analogous to the case at hand because the debtor in *Manno* filed for relief under chapter 13 the day before a state court case against him was to begin. *Manno*, 2009 Bankr. LEXIS 142, at *8. While the Movant is correct in drawing a comparison to the apparent forum shopping in both cases, the court in *Manno* ultimately decided the case based on several other factors that were necessarily combined with the suspicious timing of the petition:

> Filing a bankruptcy case in order to forum shop is but one factor in the bad faith matrix. This factor, though, is joined . . . with the nature of the alleged obligation . . . , fraud, plus [the debtor's] numerous difficulties in reorganizing under chapter 13, and his lack of effort in reducing unnecessary expenses. Taken together, these circumstances support dismissal of this case.

*Id.* at *28. Finally, the Movant cites to *In re Myers*, 491 F.3d 120 (3d Cir. 2007) to support her argument. As in *Manno*, the court in *Myers* based its finding of bad faith on five factors, only one of which was the suspicious timing of the petition. *Myer*, 491 F.3d at 125-26.

In the case at hand, the Debtor proposes to pay his creditors one hundred percent on allowed, valid claims. The Debtor alleges that he has sufficient income and assets to fund the proposed plan. As of the hearing date, the Debtor was current with his payments under the plan. The Debtor is also current with his post-petition mortgage payments on the first mortgage. However, the court finds the Debtor's plan to be patently unconfirmable based on his proposed treatment of the Movant's interest in the Farm. Section 1325(a)(1) states that "the court shall confirm a plan if the plan complies with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1) (2009). The Debtor's proposed

treatment of the Movant's interest in their mutually owned property is not permitted under Section 1322 and the Debtor has provided no authority to support the proposition that a chapter 13 debtor has the right to divest a joint property owner of her interest in the property and fix that interest as a monetary claim. The court's own analysis of the issue leads it to conclude that the interest of a co-owner in property may not be divested through a chapter 13 plan.

Nothing in the Bankruptcy Code vests this right in a chapter 13 debtor. While the trustee may have the right to sell both the interest of the Debtor and the Movant pursuant to Section 363(h)[3] of the Bankruptcy Code, that is not one of the powers transferred to the debtor under Section 1303. Section 1303 lists the rights and powers of the debtor in chapter 13: "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l) of this title." 11 U.S.C. § 1303 (2009). Although there is some indication that the provisions listed in Section 1303 are non-exhaustive, any additional powers would be those inherently necessary to carry out the plan, such as the power to sue and be sued pursuant to Section 303. 8 COLLIER ON BANKRUPTCY ¶ 1303.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009).

Furthermore, nothing in New Jersey statutory or case law gives one co-owner of real property the right to forcibly acquire the interest of the other co-owner. In *Butner v. United States*, 440 U.S. 48 (1979), the United States Supreme Court said:

> Property interests are created and defined by state law. Unless some

---

[3] "[T]he trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety . . . ." 11 U.S.C. § 363(h) (2009).

11

> federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

*Butner*, 440 U.S. at 55.

At common law, the ownership between the Debtor and the Movant is categorized as a tenancy in common. *See* RICHARD R. POWELL, POWELL ON REAL PROPERTY § 50.01 (Michael Allan Wolf ed., LexisNexis Matthew Bender 2008). "A tenancy in common is the ownership by two or more people of undivided interests in the same land. The tenants need not own equal shares. Each tenant owns his proportionate share of the undivided whole." ARTHUR S. HORN & EDWARD C. EASTMAN, JR., RESIDENTIAL REAL ESTATE LAW AND PRACTICE IN NEW JERSEY 88 (2008). Tenants in common enjoy certain legal rights, among them, partition:

> Partition means the division of the land held in cotenancy into the cotenants' respective fractional shares. If the land cannot be fairly divided, then the entire estate may be sold and the proceeds appropriately divided. Every cotenant has the right to compel partition, but that right may be modified or eliminated by the cotenants' agreements or acts.

POWELL, *supra*, at 50.07. If partition of the property is not practical, the co-owner(s) can petition the court for a sale in lieu of partition. N.J. STAT. ANN. § 2A:56-2 (West 2009) ("The superior court may, in an action for the partition of real estate, direct the sale thereof if it appears that a partition thereof cannot be made without great prejudice to the owners, or persons

interested therein.").

The Debtor has not cited any authority for the remedy he proposes - that an owner of real property may force his co-owner to sell the co-owner's interest *to him,* rather than to a third party. It is conceivable that a state court might order such a remedy despite the lack of precedent, but the problem here is that the Debtor had the opportunity to request such a remedy in the pending state court action, but failed to do so. Bankruptcy does not afford him a second chance to seek novel relief that he missed in state court.

By statute, married persons may seek equitable distribution of property. N.J. STAT. ANN. § 2A:34-23(h) (West 2009). In such cases jointly owned real estate may be awarded to one of the owners. *See Gemignani v. Gemignani*, 369 A.2d 942 (N.J. Super. Ct. App. Div. 1977). In *Gemignani,* the Appellate Division ratified the lower court's award of the family residence to the wife, over the husband's objection. *Id.* at 944. Aside from the fact that the Debtor and the Movant are not, and never were, married, *Gemignani* is distinguishable from the case at hand in that the couple had three small children and the wife was the custodial parent: "age and situation of the children of the marriage are such as to suggest the desirability of their being able to continue to live there with the custodial parent until their emancipation." *Id.* at 943. In the present case, there are no extenuating family circumstances to consider, nor any overriding policy considerations to compete with (e.g., the best interest of the child). Therefore, the court sees no reason to make a similar exception for the Debtor in this case.

The relationship between the parties is akin to that of joint venturers. In *Mitchell v. Oksienik*, 880 A.2d 1194 (N.J. Super. Ct. App. Div. 2005), the court treated as joint venturers an

13

unmarried but formerly cohabitating couple who bore two children together, sustained a relationship of approximately ten years, owned a home together and kept joint bank accounts. *Mitchell*, 880 A.2d at 1196.  Even though the house was in the defendant's name alone, the lower court found that a joint venture existed and applied the equitable remedy of sale in lieu of partition. *Id.* at 1197.  The Appellate Division affirmed the award to the plaintiff of one half of the proceeds. *Id.* at 1200-01.  Joint venture contracts are not required to be in writing to be enforceable. *Id.* at 1200 ("Although the parties had not entered into a written agreement with regard to the purchase of the real property, formal written agreements are not necessary for a joint enterprise to exist.  The existence of a joint enterprise can be . . . inferred from conduct of the parties.").  In *Mitchell*, the Appellate Division upheld the lower court's decision to first give the defendant the opportunity to buy out the plaintiff's interest in the property pursuant to certain terms and conditions; when those terms and conditions were not met and the plaintiff protested, it was ordered that the property be sold. *Id* at 1201-02.  Similarly, in the case at hand, sale of the property has been ordered by the state court. *Palone v. Dahlgren*, No. MON-C-34-08 (N.J. Super. Ct. Ch. Div. Oct. 14, 2008) (order granting partition by means of sale).  This court would not be justified in confirming a plan that abrogates that order.  As the Appellate Division stated in *Mitchell*: "The Chancery Division, Family Part, is the appropriate venue for determining property disputes between unmarried cohabitating couples." *Mitchell*, 880 A.2d at 1201.

State statutes may authorize the forced sale of property under certain circumstances, for example, under New Jersey corporations law a buy-out may be ordered when the shareholders and directors are deadlocked. N.J. STAT. ANN. § 14A:12-7(8) (West 2009).  However, New Jersey has not adopted a statute authorizing the forced sale of one co-owner's interest in real

14

estate to another. The statutory remedy for co-owners of real property is partition or sale in lieu of partition. N.J. STAT. ANN. § 2A:56-2.

New Jersey has a longstanding history of upholding palimony and property distribution agreements between non-married couples. *See, e.g., Devaney v. L'Esperance*, 949 A.2d 743 (N.J. 2008); *Kozlowski v. Kozlowski*, 403 A.2d 902 (N.J. 1979); *In re Roccamonte*, 787 A.2d 198 (N.J. Super. Ct. App. Div. 2001); *Crowe v. De Gioia*, 495 A.2d 889 (N.J. Super. Ct. App. Div. 1985), *aff'd*, 505 A.2d 591 (N.J. 1986). Although this case does not involve palimony issues, the contractual relationship between the parties must be evaluated in light of the basic principles of palimony case law, mainly, that an agreement between unmarried cohabitating adults is generally enforceable and no express agreement is required. It is rare that couples "enter express agreements that specify in detail their personal and economic expectations." Carol S. Bruch, *Property Rights of De Facto Spouses Including Thoughts on the Value of Homemakers' Service*, 10 FAM. L.Q. 101, 102 (1976). People generally don't analyze the legal consequences of their decision not to marry. *Id.* at 135. Therefore, as Judge Pashman notes in his concurring opinion in *Kozlowski*, the court should fashion an equitable remedy based on the presumption that "'the parties intend[ed] to deal fairly with each other' upon dissolution of their relationship." *Kozlowski*, 403 A.2d at 909 (Pashman, J., concurring) (quoting *Marvin v. Marvin*, 18 Cal. 3d 660, 683 (Sup. Ct. 1976)).

Neither the Bankruptcy Code nor existing state law authorizes the remedy proposed in the Debtor's plan, i.e., the forced sale to him of the Movant's interest in the Farm. The Debtor missed his opportunity to ask the state court to fashion such a remedy and the state court has

15

already ordered the sale of the Farm. The Debtor's plan is not confirmable. This being the first instance in which the Debtor has failed to submit a confirmable plan, dismissal under Section 1307(c)(5)[4] is inappropriate at this time. *See Minkes v. LaBarge (In re Minkes)*, 237 B.R. 476, 478 (B.A.P. 8th Cir. 1999) ("[W]e disagree that the filing of one unconfirmable plan, in and of itself, is sufficient cause for dismissal of a Chapter 13 case."); 8 COLLIER ON BANKRUPTCY ¶1307.04 (Alan N. Resnick & Henry J. Sommer eds., 2009).

## CONCLUSION

The Debtor's plan proposes to treat the Movant's interest in their property in a manner not permitted by the Code and not recognized by New Jersey property law. The Debtor's plan is patently unconfirmable at this time. However, dismissal is not appropriate in the interest of creditors who must be paid in full in this case. The Debtor will have a chance to file an alternate plan.

Dated: November 9, 2009.                    /s/ **RAYMOND T. LYONS**
                                             United States Bankruptcy Judge

---

[4]One of the enumerated "causes" of Section 1307 is "denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1307(c)(5) (2009).