NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   JOHN DAHLGREN,

                                               Chapter
                                               Case No. 09-18982 (RTL)

        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

William H. Oliver, Jr., Esq.
Attorney for Movant

BROEGE, NEUMANN, FISCHER & SHAVER, L.L.C.
David E. Shaver, Esq.
Attorneys for Debtor

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

      The Movant in this case moved to convert the Debtor's Chapter 13 case to Chapter 7 on the grounds that the Debtor was not making plan payments, had not paid her an agreed upon $8,000, and had not marketed or sold a piece of real estate within the time frame prescribed in the confirmed plan.

      Because the court has recently extended the date for sale of the real property, the Debtor has cured his arrears to the Trustee, a motion for stay relief by the mortgagee remains unresolved,

1

and because the Movant has a state court remedy as to the other issues, the motion to convert is denied.

Further, the Debtor's cross-motion for sanctions is also denied because the Debtor failed to observe the safe harbor rule provided for in Bankruptcy Rule 9011(c)(1)(A) and because the Movant had standing and a valid argument that the Debtor had defaulted on his payments to the secured creditor under his confirmed plan.

## JURISDICTION

This court has jurisdiction of this proceeding under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all cases and proceedings arising under Title 11 of the United States Code to the bankruptcy court.   This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) concerning the administration of this case.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

The background of this unusual case is set forth in this court's prior opinion docketed November 9, 2009.   The Movant, Regina Palone, is a co-owner of real property with the Debtor. Following a state court order for sale of the property in lieu of partition, the Debtor filed this Chapter 13 case on April 9, 2009.   After confirmation of two plans proposed by the Debtor was denied, Movant was granted relief from the automatic stay to exercise her rights in the property in state court.   That proceeding resulted in a Final Judgment by consent entered May 13, 2010,

providing for:

> Payment to Ms. Palone of $57,500 for her interest in the property payable:
>
> a. $36,500 by May 10, 2010
>
> b. $3,500 from the Chapter 13 Trustee
>
> c. $7,500 by May 3, 2010 from funds made available by Debtor's former attorney
>
> d. $10,000 by monthly payments of $1,000 commencing June 1, 2010, from funds made available by Debtor's former attorney.

The Debtor was personally liable for payment of the funds to come from his former attorney. Furthermore, since Ms. Palone was personally liable on the two mortgages encumbering the real property, the Debtor was to refinance the mortgages by July 21, 2010. If the refinancing did not occur by that date, the property was to be sold

That Final Judgment was attached to and incorporated into a chapter 13 plan that was confirmed on July 28, 2010. The plan recited that Ms. Palone had already been paid $44,000 from the Debtor. Once the Chapter 13 Trustee paid her the $3,500 that he was holding, the balance due her would be $10,000 to be paid monthly. A subsequent order in this court confirmed that Ms. Palone had no further claim to be paid through the Chapter 13 Trustee. Besides the obligations to Ms. Palone, the Debtor promised to pay all other creditors 100% by monthly payments of $350 to the Chapter 13 Trustee starting May 1, 2009, for 60 months, monthly payments directly to the mortgagee of $3,200 and a sale or refinance of the real property by July 21, 2010. Since the confirmation order was entered on July 28, 2010, the date by which the property was to be sold or refinanced under the plan had already passed. The court attributes this

3

to a scrivener's error. The intent was to have the plan mirror the Final Judgment in state court that called for a refinance by July 21, 2010, and a sale thereafter if the refinancing did not occur. Since the refinancing has not occurred as of the confirmation order, the real property was to be sold in accordance with the Final Judgment in state court.

Although the Debtor was not able to refinance the mortgages, an unsolicited offer was made by the second mortgagee to accept $6,175.58 in full satisfaction of the second mortgage which had an outstanding balance of $30,877.91 on which Ms. Palone was the sole obligor. The Debtor paid the settlement amount and the second mortgage has been satisfied. Ms. Palone has received a tax statement from the second mortgagee of income from cancellation of indebtedness.

The Debtor listed the property for sale with a broker. Ms. Palone complained that the listing price of $849,900 was too high. Ms. Palone happens to be a real estate agent. She complained that she had difficulty showing the property to prospective purchasers because the Debtor was uncooperative. She applied for relief in aid of her Final Judgment to the state court which entered an order on February 18, 2011, authorizing her to list the property with her agency for $550,000 and to sign contracts, deeds and other closing documents on behalf of herself and the Debtor. He was ordered to cooperate in selling the property and to reimburse her for the taxes and other costs associated with paying off the second mortgage at a discount.

In May 2011, the Trustee filed a certification that the Debtor had defaulted under the confirmed plan by failing to make monthly payments to the Trustee and alleged arrears of $2,800. The Debtor responded that he had been severely ill causing a disruption in income and increased medical expenses. The matter was resolved by an order entered September 15, 2011, giving the

4

Debtor until December 5, 2011, to cure the arrears and extending the date by which the property was to be sold until March 10, 2012.

More than a year passed since the Final Judgment in state court and the property has not been sold. Ms. Palone alleges that the Debtor continues to be uncooperative in selling the property. Furthermore, the Debtor still owes Ms. Palone $8,000. She applied for relief in aid of her rights under the Final Judgment. That resulted in a further Consent Order being entered in the state court on November 15, 2011, giving the Debtor 30 days to pay the $8,000 and setting a schedule for showing the real property to prospective buyers.

In the meantime, the first mortgagee filed a motion for relief from the automatic stay on September 19, 2011, alleging that the Debtor was 17 months in arrears on post-petition mortgage payments totaling $35,101.69. That was calculated based on the contractual mortgage payments that are less than the $3,200 per month the Debtor promised to pay in his plan.

The instant motion by Ms. Palone to convert to Chapter 7 was filed on November 11, 2011. She alleged various violations of the terms of the plan and of the Bankruptcy Code: failure to pay the balance of $8,000 due under the Final Judgment in state court, failure to sell or refinance the real property by July 21, 2010, failure to pay the first mortgagee $3,200 per month resulting in $55,400 in post-petition arrears, failure to make payments to the Trustee, and lack of regular income to fund the plan.

Immediately after receiving the motion to convert, on November 14, 2011, the Debtor's attorney wrote a letter to the Movant's attorney warning that the motion to convert violated Federal Rule of Bankruptcy Procedure 9011 and demanded that the motion be withdrawn. The Movant's

5

attorney declined to withdraw the motion to convert. Fifteen days later, on November 29, 2011, the Debtor filed a cross-motion seeking sanctions pursuant to Rule 9011 with a return date of December 6, 2011.

## **DISCUSSION**

*Conversion*

This motion to convert is brought pursuant to §1307(c). 11 U.S.C. § 1307(c) (2006). Section 1307(c) provides, in relevant part:

. . . on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including-

(1) unreasonable delay by the debtor that is prejudicial to creditors;

. . .

(6) material default by the debtor with respect to a term of a confirmed plan;

11 U.S.C. § 1307(c).

The Movant argues that these subsections apply here because the Debtor has failed to perform under the plan in that he has failed to pay the Movant the remaining $8,000 owed to her (to be paid outside the plan), failed to refinance or sell a certain piece of real estate by July 21, 2010, failed to make mortgage payments, and has failed to make payments to the trustee. Since the Movant is also on the mortgage, she argues that the Debtor's failures have harmed her credit

6

report, prevented her from obtaining a credit card, and from refinancing her own home.

The Debtor counters that at the time this motion was filed he and Ms. Palone had agreed in state court that the $8,000 could be paid in 30 days. That agreement was embodied in a consent order entered on November 15, 2011, but a draft order signed by her state court attorney had been presented to the state court before she filed this motion to convert. Ms. Palone certifies that she was unaware of this provision that had been agreed to by her state court attorney until after she filed the motion to convert in this court. Although the Final Judgment was attached to and incorporated in the confirmed plan, this court will not convert the case because of the Debtor's breach of the Final Judgment which also constitutes a breach of the plan. Ms. Palone has relief from the automatic stay and may enforce all of her rights under the Final Judgment and subsequent orders of the state court. Indeed, she has sought relief in aid of litigant's rights in the state court on more than one occasion. Most recently the state court, with her consent, gave the Debtor an additional 30 days to pay the $8,000 balance due. That time period has since elapsed and this court is not aware of whether the Debtor has complied with the latest state court order, but if he has not, Ms. Palone may enforce her rights there.

The confirmed plan does provide that the real property was to be sold or refinanced by July 21, 2010. As was pointed out, that date had passed when the order confirming plan was entered on July 28, 2010. The court finds that the plan was meant to reflect the Final Judgment that provided for refinance by July 21, 2010, and, failing that, a sale of the property, but did not specify a final date for sale or any consequences for failure to sell by a date certain. Furthermore, this court entered an order extending the last date for sale until March 10, 2012. The court will not

7

convert this case for failure to sell at this time. If the property remains unsold by March 10, 2012, the court may revisit the issue again. Ms. Palone claims that the order fixing March 10, 2012, as the deadline for sale of the property does not apply to her. That argument does not help her since the court has determined that prior to the order fixing that deadline, there was no deadline for sale of the property under the Final Judgment and the plan provision for sale of refinance by July 21, 2010, was an obvious mistake.

Ms. Palone repeats in this motion the argument she made to the state court that the Debtor is not cooperating in the sale. That issue was resolved in the latest state court consent order that establishes a procedure for showing the property to prospective buyers. If Ms. Palone believes that order is being violated, or should she seek a modification of that order, she should request relief from the state court. This court will not convert this case to chapter 7 based upon the Debtor's alleged failure to abide by the state court orders to cooperate with the sale.

The failure of the Debtor to pay $3,200 per month to the mortgagee, as he promised in his plan, is a serious default and one that is not related to the state court Final Judgment or subsequent orders. Saving the real property from foreclosure was one of the primary reasons for filing this chapter 13 case. The court has reviewed the docket and discovered that the mortgagee's motion was met with a settlement proposal by the Debtor and a cross motion to require the mortgagee to release Ms. Palone from any liability on the mortgage note because of an alleged large equity cushion. Both motions have been carried with the parties' consent to February 7, 2012. Pending the outcome of those motions related to the first mortgage, the court will not convert this case based upon the default by the Debtor in his promise to pay $3,200 monthly to the mortgagee. The

8

court may consider appropriate action to prevent a forfeiture of equity depending on the resolution of those motions.

The Debtor's repeated failure to make monthly payments to the Trustee is another serious default under his plan. The Debtor attributes his payment deficiencies to a serious health problem that has impacted his earnings and increased his medical expenses. The Trustee brought the Debtor's failure to make payments to the attention of the court by a motion to dismiss. That was resolved by the September 15, 2011, that gave the Debtor until December 5, 2011, to cure the arrears. At the time this motion to convert was argued, the Debtor represented that he had sent in a payment to bring his Trustee payments up to date. Although the Debtor's ability to fund his plan may be in question, the court will see if the Debtor is able to keep up his monthly payments following his recent payment to cure the arrears.

In deciding a motion to convert under §1307(c) the court should be guided by the best interest of creditors. Besides Ms. Palone and the first mortgagee, only one general unsecured creditor has filed a proof of claim for $3,123.30. Ms. Palone's attorney contacted that creditor and convinced a representative to file a certification in support of her motion to convert because it has not received any distribution from the Trustee yet. The Debtor alleges that the Movant's attorney misrepresented the status of this case to induce that person to sign a certification. While the court is sympathetic to the delay in paying that one creditor, the court does not find that the creditor is in serious risk of not being paid in full as required by the confirmed plan. The Debtor has recently cured his arrears with the Trustee. Previously the Trustee has paid Ms. Palone the $3,500 promised in the plan and paid some of the fees allowed to the Debtor's attorney as an

9

administrative expense. Once the administrative claim has been paid, the Trustee will be in a position to make distributions to the one unsecured creditor. The Debtor has a great incentive to complete his plan and receive a discharge.

The Movant cites *Mondelli v. Greenberg* as a case which supports her position. No. 07-CV-3290, 2007 U.S. Dist. LEXIS 92552 (D.N.J. Dec. 12, 2007). In *Mondelli*, the debtor's Chapter 13 case was converted from a Chapter 13 to a Chapter 7, and then back to a Chapter 13. *Id.* at *2. In the order reconverting the case to Chapter 13, the court included the following: "If the debtor fails to comply with any obligations under this Order or the Chapter 13 proceeding . . . the case shall not be dismissed but shall be reconverted to a Chapter 7 proceeding." *Id.* (modification in original). One of the requirements, in addition to making monthly payments under the plan, was that the debtor was to refinance some real property within twelve months of confirmation. *Id.* at *3. The Chapter 13 trustee eventually filed a motion to vacate the order reconverting the case to a Chapter 13 based on the debtor's failure to make payments under the plan and the debtor's failure to refinance the property at issue. The motion was granted and the district court, affirming the decision of the bankruptcy court, explained that there was sufficient evidence demonstrating a violation of the plan and that the violation was material under 1307(c)(6). *Id.* at *12-*14.

This case does bear some resemblance to *Mondelli*. Like *Mondelli*, the Debtor failed to refinance or sell his home within the time frame provided for in the original plan and he did fall behind on some of his plan payments. However, the differences between the two cases are significant enough that this court cannot rely on *Mondelli* for guidance. First, the Chapter 13

10

trustee in *Mondelli* was the party that filed the motion whereas here the motion was filed by a party in interest.[1]  *Id.* at \*3-\*4.  Although that may not make a difference in many cases, in this case it does for the simple reason that the Movant has recently entered into a settlement agreement in state court resolving the majority of her concerns and a state court order was entered reflecting that agreement.  Second, this court granted the Debtor an extension on the time he has to sell the real estate.  An order was entered on September 15, 2011, which granted the Debtor until March 10, 2012, to sell the property.

Although the Movant argues that she does not trust that the Debtor will live up to the terms of the state court agreement and that he will thwart her efforts to sell the property, she has not provided any evidence to support the allegations.  The court cannot convert a case to Chapter 7 under 1307(c)(1) based on speculation that a breach of an agreement may someday occur.

Finally, 1307(c) is a permissive section.  It permits, but does not require, the court to dismiss or convert a case in certain circumstances.  Based on the foregoing, the court chooses not to grant the motion based on 1307(c) at this time.  However, should the Debtor fail to make timely payments to the Trustee in the future or should the mortgagee's motion not be resolved favorably, the court may revisit the issue.

### *Lack of Regular Income*

The Movant's final argument is that because the Debtor admitted to not having a regular income, section 109(e) requires the court to dismiss or convert the Debtor's case.  The Movant errs here as well.  An order confirming a plan "has *res judicata* effect as to all issues dealt with

---

[1] In fact, the Chapter 13 trustee in this case did file a motion to dismiss for failure to make plan payments.  The motion was resolved by an order of this court which granted the Debtor until December 5, 2011 to cure his arrearages under the plan.  Further, the order extended the time the Debtor has to sell his real property to March 10, 2012.

under the plan, including the eligibility of the debtor for chapter 13 relief."[2] *In re San Miguel Sandoval*, 327 B.R. 493, 511 (B.A.P. 1st Cir. 2005). Further, the Movant's objection to the plan confirmation did not mention 109(e) as a possible reason the plan was unconfirmable. Therefore, whether the theory is collateral estoppel or *res judicata*, once this court confirmed the Debtor's plan, the 109(e) issue was already decided. Subsection 109(e) will not serve as a basis to convert the Debtor's case to Chapter 7.

*Sanctions under Bankruptcy Rule 9011*

The Debtor filed a cross-motion seeking entry of sanctions against the Movant and her attorney pursuant to Bankruptcy Rule 9011. The Debtor contends that because the Movant filed the instant motion without advising the court that she had settled the same issues in state court[3] and that the Debtor, through his attorney, notified the Movant's attorney of this settlement and the Movant still opted not to withdraw the motion, the Movant has violated Rule 9011. Further, the Debtor argues that a portion of the relief that the Movant seeks has already been resolved by this court's September 15 order. Finally, the Debtor argues that the Movant made false statements and misrepresentations of fact.

The Movant argues that the September 15 order does not limit the rights of other interested parties who are allowed relief under section 1307(c). The Movant also argues that she was unaware of the state court order until December 4, 2011, and that she had no intention of filing a

---

[2] This is perhaps more accurately referred to as "collateral estoppel" than "*res judicata*." *See In re Torres Martinez*, 397 B.R. 158, 165-66 (B.A.P. 1st Cir. 2008).

[3] In the state court consent order, the Movant and Debtor agreed as to times when the property would be made available for showing, that the Debtor would pay the remaining $8,000 within 30 days, and that the Debtor would use his best efforts to negotiate an agreement with the mortgagee whereby the Movant would be released as an obligor under the mortgage and note.

motion to dismiss until she learned that the first mortgagee had brought a motion for stay relief. Finally, the Movant argues that good grounds exist for believing that the case should be dismissed pursuant to 1307(c).

Rule 9011(b) provides, in relevant part, that when an attorney presents a petition, pleading, written motion, or other paper to the court, that attorney "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-

. . .

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;

. . . ."

FED. R. BANKR. PROC. 9011

Rule 9011(c)(1)(A) provides that a motion for sanctions may not be "presented to the court unless, within 21 days after service of the motion . . ., the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . ." FED. R. BANKR. PROC. 9011(c)(1)(A). "If the twenty-one day period is not provided, the motion must be denied." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008). Here, the Debtor

13

failed to follow the proper procedure.   The motion to convert was filed on November 11 and the cross-motion for sanction was filed on November 29.   This is short of the twenty-one days required under the rule and the court has not provided for a shortening of the twenty-one day time frame.   Also, the rule requires that a motion for sanctions be served on the respondent, but not filed with the court, until the 21-day period has passed.   In this case the Debtor did not serve a motion on the Movant and her attorney; he merely sent a letter demanding that the motion to convert be withdrawn for the reasons stated above.   A warning letter does not satisfy the safe harbor provision of Rule 9011 that a motion be served as a prerequisite to seeking sanctions from the court.   *In re Jazz Photo Corp.*, 312 B.R. 524, 533-34 (Bankr. D.N.J. 2004); *Slater v. Skyhawk Transp.*, Inc., 187 F.R.D. 185, 200 (D.N.J. 1999) ("[A]n informal notice, either by letter or other means, does not trigger the commencement of the 21 day period").

Furthermore, the Movant, as a party in interest, had standing to file a motion to convert. Also, since the Debtor had defaulted on his payments to the mortgagee, she had adequate cause to file the motion to convert, even though the court has chosen not to convert the case at this time.

The case law that has developed under Federal Rule of Civil Procedure 11 is an appropriate place to look for guidance.   *In re Mahendra*, 131 F.3d 750 (8th Cir. 1997), *cert denied*, 523 U.S. 1107 (1998); *In re Spectee Group, Inc.*, 185 B.R. 146 (Bankr. S.D.N.Y. 1995).   A party must make an "inquiry reasonable under the circumstances."   FED. R. BANKR. PROC. 9011(b).   "The concern of Rule 9011 is not the truth or falsity of the representation in itself, but rather whether the party making the representation reasonably believed it at the time to have evidentiary support." *In re Taylor*, 655 F.3d 274, 283 (3d Cir. 2011).   "The imposition of Rule 11 sanctions ... requires

only a showing of objectively unreasonable conduct." *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.*, 57 F.3d 1215, 1225 (3d Cir.1995).

In determining the reasonableness of a party's inquiry, courts often look to several factors:

> . . . the amount of time available to the signer for conducting the factual and legal investigation; the necessity for reliance on a client for the underlying factual information; the plausibility of the legal position advocated; and whether the case was referred to the signer by another member of the Bar. Fed.R.Civ.P. 11 advisory committee note. One court has proposed a fifth factor: the complexity of the legal and factual issues implicated. *Thomas v. Capital Security Servs., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc).

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988).

However, the standard remains "reasonableness under the circumstances. *Taylor*, 655 F.3d at 284.

In this case, three of the reasons cited by the Movant as cause to convert to chapter 7 have been rejected by the court: the failure to pay the balance of $8,000 to the Movant under the state court Final Judgment , the failure to sell or refinance the real property by July 21, 2010, and the default in payments to the Trustee. Some of those issues had been presented to the state court and resolved in a consent order entered November 15, 2011, during the time that this motion to convert was pending. The date for sale of the property and curing the arrears to the Trustee had been resolved in this court's order dated September 15, 2011. The Movant should not have presented the same issues to this court. Nevertheless, she had valid reasons to seek conversion due to the Debtor's default in the mortgage payments. There is no basis to find a violation of Rule 9011.

Therefore, the request for sanctions under Rule 9011 will be denied.

## **CONCLUSION**

Based on the foregoing, the motion to convert is denied and the cross-motion for sanctions is denied.


Dated: January 19, 2012                    /S/**_Raymond T. Lyons_**
                                           United States Bankruptcy Judge